1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADRIAN CONTRERAS-REBOLLAR,

                Petitioner,

     v.

JAMES KEY,

                Respondent.

CASE NO. 3:15-CV-05471-BHS-JRC

REPORT AND RECOMMENDATION

NOTED:  SEPTEMBER 23, 2016

13

14

15

16

17

18

19

20

21

22

23

24

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge, J. Richard Creatura. The authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction, thus, the petition is filed pursuant to 28 U.S.C. § 2254.  The petition is mixed:  the first and second claims are exhausted while the third and fourth claims are unexhausted and currently pending in Washington state court. Petitioner elected to voluntarily delete the two unexhausted claims (grounds 3 and 4) and proceed with the two exhausted claims (grounds 1 and 2).

Although petitioner's co-counsel Jay Berneburg was excluded from the trial when a prosecution witness, Regina Hernandez, testified that Mr. Berneburg told her what to say (which subsequently lead to him becoming a witness to rebut her statement), petitioner was not denied a

1    fair trial and effective assistance of co-counsel when the trial court denied petitioner's motion for

2    a mistrial.  Both parties focused on credibility throughout the trial -- Ms. Hernandez was a

3    habitual methamphetamine user who admitted to having a poor memory – and her testimony was

4    inconsistent. Defense counsel also made a tactical decision to use the self-defense jury

5    instruction rather than both self-defense and "defense of other" instructions.  In light of all of the

6    corroborating evidence pointing to petitioner's guilt, and the witness's credibility, petitioner fails

7    to show that the rulings of the state court for the exhausted claims violated clearly established

8    federal law. Therefore, this Court recommends that grounds 1 and 2 of the petition be denied and

9    grounds 3 and 4 be dismissed without prejudice.

10                                             **DISCUSSION**

11   **A.        Procedural Background**

12           Petitioner Adrian Contreras-Rebollar seeks § 2254 habeas relief from his convictions by

13   jury verdict of two counts of first-degree assault, with sentencing enhancements for the use of a

14   firearm. Dkt. 5. Petitioner also pleaded guilty to one count of second-degree unlawful possession

15   of a firearm. *Id.*

16           The petition was filed on July 20, 2015. Dkt. 15. In respondent's original answer, filed on

17   October 2, 2015, respondent argued that the petition was a mixed petition and that petitioner's

18   third and fourth grounds for relief were unexhausted. Dkt. 14.   At the time of respondent's

19   original answer, state remedies were still available. *See id.* Petitioner then sought two extensions

20   to file his response to respondent's answer. Dkts. 17, 22. The Court granted petitioner's

21   extensions. Dkt. 20, 24. Petitioner filed a traverse on February 10, 2016.  Dkt. 25. Petitioner's

22   traverse did not address whether he exhausted grounds three and four of his petition. *See* Dkt. 25.

23

24

1   On February 17, 2016, because neither party had informed the Court of the outcome of

2   petitioner's state actions, if any, with respect to grounds three and four, the Court ordered

3   respondent to supplement his answer and inform the Court if the arguments in the original

4   answer were still valid.  Dkt. 26. On February 25, 2016, respondent filed his supplemental

5   answer and argued that grounds 3 and 4 were unexhausted but procedurally barred. Dkt. 27. On

6   March 3, 2016, petitioner filed an objection to the Court's order directing respondent to file a

7   supplemental answer. Dkt. 28. In the interests of justice, the Court entered an order allowing

8   petitioner to file a traverse to respondent's supplemental answer. Dkt. 29. On March 30, 2016,

9   petitioner filed his supplemental traverse. Dkt. 30. Respondent then filed a second supplemental

10  memorandum re: exhaustion of state remedies on July 8, 2016.  Dkt. 35.

11      Respondent argues that in light of petitioner's April 21, 2016 judgment and sentence in

12  his case, petitioner is not time-barred from exhausting state court remedies on his unexhausted

13  claims 3 and 4.  Dkt. 35 at 2-4. Petitioner's personal restraint petition remains pending and

14  petitioner has taken an appeal from the entry of the new judgment and sentence in his case.  *Id*. at

15  2.

16      Petitioner then filed a supplemental memorandum on August 3, 2016 objecting to

17  respondent's request that his petition be dismissed without prejudice.  Dkt. 36 at 1.  Petitioner

18  requested that the Court allow him to voluntarily delete the two unexhausted claims in question

19  (grounds 3 and 4) and proceed with his two exhausted claims (grounds 1 and 2).  *Id*.

20      In his federal habeas petition, petitioner raises the following claims:  (1) whether the trial

21  court erred by denying a mistrial after the State's witness, Ms. Hernandez, testified that one of

22  petitioner's defense attorney's instructed her to lie, which violated petitioner's right to a fair trial

23  and his right to ineffective assistance of counsel; (2) whether defense counsel provided

24

1  ineffective assistance of counsel at trial by failing to propose a "defense of another" jury

2  instruction; (3) whether the prosecutor committed misconduct in the closing argument by

3  commenting on petitioner's post-arrest silence, his request for assistance of counsel, alleged

4  "tailoring" of his trial testimony, vouching for the credibility of the State's witnesses, and

5  disparaging petitioner's testimony; and (4) whether the cumulative effect of the errors in the first

6  three habeas claims deprived petitioner of a fair trial.  Dkt. 5 at 6-11.

7  Although petitioner's first and second claims appear to be exhausted, petitioner's third

8  and fourth claims appear to be unexhausted and are currently pending in Washington state court.

9  Therefore, his petition is a mixed petition.  When faced with a mixed petition, a district court

10  may generally exercise one of three options: (1) dismiss the mixed petition without prejudice to

11  allow petitioner to present his unexhausted claims to the state court and then return to federal

12  court to file a new habeas petition containing all of the claims; (2) stay the mixed petition to

13  allow the petitioner to present his unexhausted claims to the state court and then return to federal

14  court for review of his perfected petition; or (3) allow the petitioner to delete the unexhausted

15  claims and to proceed with the remaining claims. *See Rhines v. Weber*, 544 U.S. 269, 274-79

16  (2005). Petitioner has chosen the third option, which the undersigned recommends accepting,

17  therefore, only grounds 1 and 2 will be discussed for purposes of this Report and

18  Recommendation.

19  **B.**     **State Procedural History**

20       **1.**  **Direct Appeal**

21  Through counsel on February 29, 2008, and *pro se* on May 13, 2008, petitioner

22  appealed to the Washington Court of Appeals. Dkt. 15, Exhibit 11 (Brief of Appellant), Exhibit

23  12 (*Pro Se* Statement of Additional Grounds).  Appellate counsel's brief presented three issues,

24

arguing (1) that the trial court abused its discretion and denied petitioner his rights to a fair trial and effective assistance of counsel when it denied petitioner's motion for a mistrial after Regina Hernandez claimed that defense counsel had instructed her to commit perjury; (2) the evidence was insufficient to establish that the shooting was not in self-defense; and (3) that the trial court erred in sentencing petitioner based on a criminal history and community custody status that petitioner did not agree to and the State did not prove. Dkt. 15, Exhibit 11. In his *pro se* statement of additional grounds, petitioner raised three additional issues, that trial counsel provided ineffective assistance by: (1) failing to propose a "defense of another" instruction; (2) proposing jury instructions on the crime of assault in which the phrase "great bodily harm" was denied but also proposing instructions in which the phrase "great personal injury" was not defined, and (3) proposing a "no duty to retreat" instruction. Dkt. 15, Exhibit 12. The Washington Court of Appeals affirmed the convictions but remanded for resentencing. Dkt. 15, Exhibit 14.

Petitioner, *pro se,* filed several motions for extensions to file a petition for review. Dkt. 15, Exhibits 15-26. The first six motions were granted, but in granting the sixth motion, the clerk of the Supreme Court cautioned petitioner that no further extensions would be allowed and that his petition for review must be filed no later than November 30, 2009. Dkt. 15, Exhibit 26. Petitioner then filed a seventh motion for extension, which the clerk denied and set the case for consideration of a clerk's motion to dismiss. Dkt. 15, Exhibit 28.

On December 7, 2009, petitioner filed a motion to modify the clerk's ruling but did not file a petition for review. Dkt. 15, Exhibit 29. On January 28, 2010, petitioner filed his petition for review. Dkt. 15, Exhibit 31. On February 11, 2010, the Washington Supreme Court, without comment, denied petitioner's motion to modify the clerk's ruling and granted the clerk's motion

1  to dismiss. Dkt. 15, Exhibit 32. The Court of Appeals issued its mandate on April 14, 2010. Dkt.

2  15, Exhibit 33.

3      **2.  Appeal Following Remand and Personal Restraint Petition (Consolidated)**

4          On remand from the Washington Court of Appeals, the superior court imposed the same

5  sentence it had imposed in 2007. Dkt. 15, Exhibit 34 at 15-16. Petitioner, through counsel,

6  appealed the superior court's decision to the Washington Court of Appeals and argued that: (1)

7  the resentencing court erred by denying his request for new counsel; (2) petitioner was entitled to

8  have a jury, rather than the court, determine whether he was on community custody status when

9  he committed the assaults and unlawful firearm possession; (3) the court miscalculated the date

10  on which his term of community custody ended; (4) the court failed to prove that petitioner was

11  on community custody at the time of the offense; and (5) that his attorney at the resentencing

12  hearing was ineffective for failing to conduct an independent determination of the date on which

13  petitioner's community custody ended. Dkt. 15, Exhibit 35.

14          Petitioner, *pro se,* filed a separate personal restraint petition raising two claims: (1)

15  whether the trial court erred by excluding attorney Berneburg from the courtroom and (2)

16  whether petitioner's attorney provided ineffective assistance of counsel at trial by failing to

17  propose a "defense of another" jury instruction." Dkt. 15, Exhibits 36, 37. Petitioner's direct

18  appeal and personal restraint petition were consolidated. Dkt. 15, Exhibit 38.

19          Petitioner then filed a supplemental grounds brief to his personal restraint petition raising

20  several additional grounds for relief: (1) whether the trial court erred in admitting pre-*Miranda*

21  statements he made to the arresting officer; (2) whether the prosecutor improperly commented on

22  his right to remain silent; (3) whether he received ineffective assistance of counsel when counsel

23  failed to propose a jury instruction regarding his statements to the arresting officer; (4) whether

24

1   the prosecutor committed misconduct in closing argument; and (5) whether cumulative error

2   deprived petitioner of a fair trial. Dkt. 15, Exhibit 43.

3          The Washington Court of Appeals issued an unpublished opinion affirming petitioner's

4   conviction but remanding for re-sentencing at which the State would be able to present evidence

5   of petitioner's community custody status at the time of the crimes. Dkt. 15, Exhibit 44. The

6   Washington Court of Appeals rejected the two claims in petitioner's personal restraint petition

7   and dismissed his supplemental petition as untimely under RCW 10.73.090. Dkt. 15, Exhibit 44.

8          After several motions for extension, Dkt. 15, Exhibits 45-54, petitioner, proceeding *pro*

9   *se,* sought discretionary review in the Washington Supreme Court of the Washington Court of

10  Appeals' decision in his personal restraint petition. Dkt. 15, Exhibit 55. Petitioner argued that the

11  Washington Court of Appeals erred by dismissing his supplemental claims as untimely and by

12  denying his two original claims on the ground that the issues had been previously heard and

13  determined. *Id.*

14         The Washington Supreme Court granted discretionary review and concluded that

15  petitioner's supplemental claims were not time-barred under RCW 10.73.090. Dkt. 15, Exhibit

16  56. The Washington Supreme Court held that the Washington Court of Appeals denial of

17  petitioner's original claims did not merit review but remanded the case to the Washington Court

18  of Appeals with instructions to address petitioner's supplemental claims on the merits. *Id.*

19         On remand, the parties submitted additional briefing. Dkt. 15, Exhibits 59-61. The

20  Washington Court of Appeals issued an unpublished opinion addressing and rejecting each of

21  petitioner's supplemental claims. Dkt. 15, Exhibit 62. Petitioner did not seek discretionary

22  review in the Washington Supreme Court. The Washington Court of Appeals issued its mandate

23  on January 9, 2015. Dkt. 15 Exhibit 63.

24

### 3. <u>Second Personal Restraint Petition</u>

Petitioner filed his second personal restraint petition on December 17, 2015 and raised the following issues: (1) whether trial courts should be allowed to intervene any given time after an appeal has been initiated in order to correct trial mistakes at their own discretion; (2) whether the trial court erred when it failed to enter written findings to substantiate the record that petitioner was in community custody status; and (3) whether it is a miscarriage of justice when a trial court fails to consider its discretion to impose concurrent terms of confinement. Dkt. 27-1, Exhibit 1 at 11-12. It appears that petitioner's second personal restraint petition remains pending before the Washington state courts. Dkt. 27 at 3; Dkt. 35 at 2.

## C.    Exhaustion--Grounds 1 and 2

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Respondent concedes that petitioner properly exhausted grounds 1 and 2. Dkt. 14 at 9.

## D.    Grounds 3 and 4 Are Unexhausted But Not Procedurally Barred

In his third claim, petitioner argues that the prosecutor committed misconduct in the closing argument by commenting on petitioner's post-arrest silence, his request for assistance of counsel, alleged "tailoring" of his trial testimony, vouching for the credibility of the State's

witnesses, and disparaging petitioner's testimony.  Dkt. 5 at 8.  In his fourth claim, petitioner argues that the cumulative effect of the errors in the first three habeas claims deprived petitioner of a fair trial.  Dkt. 5 at 10.

Previously, respondent argued that grounds 3 and 4 were procedurally barred under RCW 10.73.090.  Dkt. 27 at 3-4.  However, after petitioner was re-sentenced on April 21, 2016, respondent changed his position, asserting that petitioner was not time-barred from exhausting state court remedies for Grounds 3 and 4.  Dkt. 35 at 2-4. Based on the judgment and sentence entered on April 21, 2016 and petitioner's appeal from the entry of the new judgment and sentence in his case (Dkt. 35-1, Exhibit 4 at 29), it appears grounds 3 and 4 are unexhausted, but not procedurally barred.

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

Because petitioner has not proven that he has exhausted his available state remedies with respect to grounds 3 and 4, and because he still has the ability to present these claims to the Washington state courts, he presents this court with a mixed petition.  Petitioner concedes that these grounds are unexhausted and requests to voluntarily dismiss grounds 3 and 4, while allowing the exhausted claims to proceed before the Court.

**E.       Options for Mixed Petitions**

1    As noted above, a district court may generally exercise one of three options: (1) dismiss

2    the mixed petition without prejudice; (2) stay the mixed petition to allow the petitioner to present

3    his unexhausted claims to the state court; or (3) allow the petitioner to delete the unexhausted

4    claims and to proceed with the remaining claims. *See Rhines*, 544 U.S. at 274-79.   Respondent

5    requests that the Court dismiss the petition without prejudice, and in the alternative, allow

6    petitioner to elect to voluntarily delete the two unexhausted claims and proceed with the first two

7    grounds.   Petitioner requests that he be permitted to delete the unexhausted claims and move

8    forward with the exhausted claims.   If the Court were to now consider only the exhausted claims

9    (grounds 1 and 2), petitioner could face procedural obstacles should he choose to bring a second

10   or successive habeas petition to challenge his current conviction. *See Burton v. Stewart*, 549 U.S.

11   147, 154 (2007) (noting that habeas petitioners proceeding with only exhausted claims may risk

12   subjecting later petitions that raise new claims to rigorous procedural obstacles); *Cooper v.*

13   *Calderon,* 274 F.3d 1270, 1272-73 (9th Cir. 2001) (per curiam) (noting that the relevant statutes

14   greatly restrict the power of federal courts to award relief to state prisoners who file second or

15   successive habeas corpus applications); 28 U.S.C. § 2244(b) (providing that a claim presented in

16   a second or successive § 2254 habeas petition "shall" be dismissed unless certain substantive and

17   procedural requirements are met).

18    Nevertheless, since both parties have agreed that this is the most appropriate way to deal

19   with this case, and since it may take a considerable amount of time for all four claims to be fully

20   exhausted, the undersigned recommends allowing petitioner to proceed with the exhausted

21   claims and to dismiss without prejudice the unexhausted claims, as he has requested.   Therefore,

22   only grounds 1 and 2 will be discussed herein.

23   **F.        BASIS FOR CUSTODY AND FACTS**

24

1   Petitioner was convicted by jury verdict of two counts of first-degree assault, with

2   sentencing enhancements for the use of a firearm. Dkt. 15, Exhibits 10, 58. Petitioner also

3   pleaded guilty to one count of second-degree unlawful possession of a firearm. *Id.* On February

4   16, 2007*,* he was sentenced to 380 months of confinement. *Id.* On March 1, 2013, following a

5   remand from the Washington Court of Appeals, the superior court conducted a re-sentencing

6   hearing and imposed the same 380-month prison term. *Id.*

7   The Washington Court of Appeals summarized the facts in petitioner's case as

8   follows:

9   On the afternoon of April 11, 2006, Contreras, Nicholas Solis, Regina Hernandez,
    and Ahria Kelly were at a friend's house in Tacoma where they drank alcohol and
10  smoked methamphetamine. Contreras, Solis, Hernandez, and Kelly disagree as to
    some of what followed that evening.

11

12  Around five or six o'clock in the evening, Contreras, Solis, Hernandez, and Kelly
    left their friend's house and went to a place described as "Wolfie's alley," so Solis
13  could pick up a vehicle. Report of Proceedings (RP) (Jan. 23, 2007) at 254.
    Contreras and Hernandez left Wolfie's alley to go drive around; Solis and Kelly
14  followed in the car that Solis had just retrieved. Hernandez alleged that Contreras
    flagged Solis to stop, got out of his vehicle, and argued with Solis about a "sack
15  of dope" and a Palm Pilot. RP (Jan. 23, 2007) at 259. According to Hernandez,
    Contreras returned to his vehicle, said, "[T]his mother fucker is getting on my
16  nerves; I'm going to do him in[,]" and retrieved a gun from the backseat of the
    car. RP (Jan. 23, 2007) at 261. After going back to Wolfie's alley,[1] Contreras and
    Hernandez subsequently drove to Yessica Rosas's house.
17

18  After arriving at Rosas's house, Rosas and Hernandez were talking in Rosas's
    bedroom when Contreras went outside to his car. Contreras returned wearing dark
19  clothes and sunglasses, carrying a gun. Rosas testified that Contreras appeared
    nervous and looked like he was wearing a disguise. Rosas's father, Jose Rosas,
20  heard people talking and he asked Hernandez and Contreras to leave. Jose
    testified that he watched Hernandez and Contreras drive away before returning to
    bed.
21

22

23  [1] Hernandez claimed that, during their second visit to Wolfie's alley, Solis, while wearing
    a bandana over his face, pointed a gun at Contreras who responded by firing shots in Solis's
24  direction. Kelly, however, testified that he did not see Solis wearing a bandana over his face or
    see Contreras and Solis pull guns on each other. [Footnote by the Washington Court of Appeals.]

Contreras sat in the driver's seat and Hernandez sat in the front passenger seat when they left Rosas's house. Hernandez testified that she was looking at CDs when she heard Contreras say, "[T]here those mother fuckers are." RP (Jan. 23, 2007) at 289. The two were only a short distance from Rosas's house when Contreras started shooting at the oncoming vehicle. After Contreras finished shooting, Hernandez heard him say, "I just dumped on those fools." RP (Jan. 23, 2007) at 290. Hernandez testified that Contreras did not appear afraid; instead, he appeared brave, calm, and cool. Further, Hernandez testified that she had her head down looking at CDs and did not see Solis's vehicle approach; she looked up after Contreras started shooting and saw only the taillights of Solis's vehicle. Contreras, however, relayed a different story at trial. Contreras claimed that he saw Solis's vehicle speed up and the headlights turn off. He also claimed to see Solis wearing a bandana[2] and raise the barrel of a gun. Based on this information, Contreras believed that Solis was preparing to commit a drive-by shooting. Contreras testified that he feared for his life, reached for his gun, ducked, and fired towards Solis's vehicle.

Solis was driving with Kelly in the passenger seat when Contreras shot at them. Kelly testified that he yelled "[d]uck" when he saw the flash of a gun firing from the driver's window of a parked vehicle with no headlights. RP (Jan. 24, 2007) at 501. Solis did not see Contreras's vehicle and only remembered seeing gunfire sparks at the time of the shooting. One bullet struck Kelly in the shoulder and at least one bullet struck Solis. As a result of the shooting, Solis is paralyzed from the chest down.

Shortly after the shooting, Kim Say-Ye was returning home when she saw a vehicle parked on the grass in front of her neighbor's house. The vehicle caught her attention because she saw shattered glass and because both the windshield wipers and headlights were on. She thought the driver was drunk and was about to call the police when Officer Timothy Caber showed up.

Caber, who had received the dispatch call for the shooting around 1:00 a.m., briefly spoke to Say-Ye when he arrived at the scene. Caber found the vehicle still running and stopped against landscaping railroad ties on the lawn. He also observed that the windshield wipers and headlights were on. Caber found Solis inside, slumped over; a rifle lay wedged between the driver and passenger seats with the barrel pointing toward the dash.

Edward Robinson, a firearm examiner at the Washington State Patrol Crime Laboratory, determined that the gun was a black powder rifle. Robinson received the rifle without a ram rod and without any wadding, projectiles, and gun powder

---

[2] Hernandez testified that Surenos tie bandanas over their faces when they are preparing to commit a drive-by shooting or assault. [Footnote by the Washington Court of Appeals.]

inside the rifle's chamber or otherwise in a container associated with the rifle. Solis testified that he traded dope for the rifle on the day of the shooting and that he thought the rifle was inoperable.

On April 12, 2006, the police arrested Contreras at a Motel 6. The State charged him with two counts of first degree assault, with firearm enhancements, and one count of second degree unlawful possession of a firearm. On November 30, 2006, defense counsel Jay Berneburg filed a notice of association in this case. Contreras hired Berneburg to supplement appointed counsel James Schoenberger at trial. At trial, Berneburg gave the opening statement and cross examined three witnesses. He also assisted Schoenberger with preparations outside of trial. On January 17, 2007, Contreras pleaded guilty to second degree unlawful possession of a firearm.

On January 17, 2007, trial began. Both parties focused on credibility throughout the trial, as many of the witnesses were habitual methamphetamine users who admitted to having a poor memory.[3] On January 23, 2007, Hernandez testified that she did not see the headlights on Solis's vehicle. When the prosecution questioned her, Hernandez acknowledged that her testimony conflicted with a statement she made to police officers shortly after the shooting. However, she claimed that Berneburg had told her the headlights were off. On direct, Hernandez denied that Berneburg told her to say the headlights were off, but on cross examination she claimed he had. On January 25, 2007, Contreras argued that Hernandez's testimony shattered his counsel's credibility and moved for a mistrial. The trial court denied the motion, but agreed to add Berneburg to Contreras's witness list for the sole purpose of rebutting Hernandez's allegation. Now a witness, the trial court excluded Berneburg from the courtroom. On February 1, 2007, the jury found Contreras guilty on both counts of first degree assault and found that he was armed with a firearm during the commission of both crimes.

Dkt. 15, Exhibit 14 at 2-5.

## G.   EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether

---

[3] For example, Hernandez testified that she often hallucinates and hears things when she is "on a come-down" from taking drugs. RP (Jan. 23, 2007) at 241. [Footnote by the Court of Appeals.]

relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Petitioner's habeas claims raise only questions of law and may be resolved by a review of the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary hearing.

**H.      CLAIMS ON THE MERITS**

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1. *Ground 1 – The trial court erred by denying a mistrial after a State's witness (Regina Hernandez) testified that defense co-counsel coached her testimony, which violated his right to a fair trial and his right to effective assistance of counsel (Claim 1)*

In his first ground for relief, petitioner alleges that the trial court violated his Sixth Amendment right to counsel when it excluded one of his defense attorneys, Jay Berneburg, from part of the trial proceedings. Dkt. 5 at 5. Petitioner's memorandum of law provides more information. Dkt. 5-2 at 35. Petitioner states that he retained Mr. Berneburg to join his case as co-counsel. *Id.* At trial, Ms. Hernandez testified that the headlights were turned off on Solis' car. *Id.* In her statement to police the day after the incident, Ms. Hernandez stated that she did not see the car until after it passed. *Id.* Petitioner alleges that the prosecutor, Mr. Greer, went up to Ms. Hernandez during a trial recess and conferred with Ms. Hernandez. *Id.* After the recess, on cross-examination, Ms. Hernandez stated that Mr. Berneburg told her to say that Nicholas Solis' headlights were turned off and that Mr. Berneburg was not present. *Id.* Respondent argues that petitioner has not shown that the Washington state court's decision on this claim was contrary to or an unreasonable application of clearly established federal law and that it was based on a reasonable reading of the trial court record. Dkt. 14 at 22.

Respondent argues that Ms. Hernandez testified on direct that she did not see whether Solis's headlights were on or off at the time of the shooting. Dkt. 14 at 14.  On cross-examination, Ms. Hernandez insisted that Mr. Berneburg had instructed her to testify that the headlights were off at the time of the shooting (which would have supported petitioner's version of events). *Id.*  The defense moved for a mistrial and alternatively indicated it would call Mr. Berneburg as a witness to rebut Ms. Hernandez's claim. *Id.* Respondent contends that the trial court exercised its discretion and ruled that Mr. Berneburg could be called as a rebuttal witness by the defense but that he would not be able to continue his participation in the trial or be present in the courtroom. *Id.* Mr. Schoenberger, petitioner's appointed co-counsel, had handled the majority of the defense duties up to that point and was able to conduct the remainder of the trial

1    without any difficulty. *Id*. Finally, respondent argues that the trial court took the proper steps to

2    ensure petitioner received a fair trial, as the Washington Court of Appeals concluded he had. *Id*.

3    Moreover, it is respondent's position that Ms. Hernandez's unexpected claim that Mr. Berneburg

4    had coached her did not render the trial fundamentally unfair. *Id*.  Mr. Berneburg's absence from

5    the remainder of the trial did not deny petitioner the right to effective assistance of counsel in

6    light of Mr. Berneburg's minor role on the defense team.  *Id*.

7        **a.    The Law—Sixth Amendment Right to Counsel and Effectiveness of Counsel**

8        Petitioner alleges that the trial court violated his Sixth Amendment right to counsel when

9    it excluded Mr. Berneburg from trial proceedings. Dkt. 5 at 5. Petitioner states in ground 1 of his

10   petition that the trial court abused its discretion when it "took direct arbitrary action" against

11   Petitioner's defense team that he had composed by excluding his retained co-counsel of choice,

12   Mr. Berneburg. Petitioner states that he privately retained Mr. Berneburg with his family's

13   personal expenses.  Petitioner complains that Mr. Berneburg was excluded in the middle of trial

14   from defending petitioner, without a proper adjudication by the trial court, before it took action.

15   Dkt. 5 at 5.

16       The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

17   enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  An

18   element of this right is the defendant's "right to be represented by an otherwise qualified attorney

19   whom that defendant can afford to hire, or who is willing to represent the defendant even though

20   he is without funds."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (*quoting*

21   *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)); *see also Powell v.*

22   *Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being

23   conceded, a defendant should be afforded a fair opportunity to secure counsel of his own

24

choice.").  The erroneous denial of the right to counsel of choice qualifies as structural error; that is, the defendant who establishes that his right to counsel of choice was violated need not demonstrate prejudice in order to be entitled to relief, as would a defendant who is claiming that counsel provided ineffective assistance.  *Gonzalez-Lopez*, 548 U.S. at 150.  "[T]he right at stake here is the right to counsel of choice, not the right to a fair trial; and that right was violated because the deprivation of counsel was erroneous.   No additional showing of prejudice is required to make the violation 'complete.'"  *Id*. at 146.

However, the right to counsel of choice is "circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988).  A defendant does not have the right to be represented by (1) an attorney he cannot afford, (2) an attorney who is not willing to represent him, (3) an attorney who has a conflict of interest, or (4) a person (other than himself) who is not a member of the bar.  *Id*.  A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, … and against the demands of its calendar."  *Gonzalez-Lopez*, 548 U.S. at 152 (*citing Wheat*, 486 U.S. at 163-64; *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).  Thus, trial courts have the discretion to make scheduling and other decisions that may have the effect of excluding a defendant's first choice of counsel.  *Id*.

Petitioner additionally argues that he was denied effective assistance of counsel when the trial court denied petitioner's motion for a mistrial and Mr. Berneburg was excluded from participation in his trial.   Dkt. 5-2 at 8. The primary question when reviewing a claim of ineffective assistance of counsel under the AEDPA is not whether counsel's representation was deficient, or whether the state court erred in analyzing the claim, but whether the state court adjudication of the claim was unreasonable.  *Landrigan*, 550 U.S. at 472-473.  Because counsel has wide latitude in deciding how best to represent a client, review of counsel's representation is

1   highly deferential and is "doubly deferential when it is conducted through the lens of federal

2   habeas." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

3         To show ineffective assistance of counsel, a petitioner must satisfy a two-part standard.

4   First, the petitioner must show counsel's performance was so deficient that it "fell below an

5   objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

6   Second, the petitioner must show the deficient performance prejudiced the defense so "as to

7   deprive the defendant of a fair trial, a trial whose result is unreasonable." *Id*. The petitioner

8   must satisfy both prongs to prove his claim of ineffective assistance of counsel. *Id*. at 697.

9         Under the first prong, the petitioner must specifically show "counsel made errors so

10   serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

11   Amendment." *Strickland*, 466 U.S. at 687. The proper measure of attorney conduct remains

12   reasonableness under prevailing professional norms. *Wiggins v. Smith*, 539 U.S. 510, 521

13   (2003). To avoid the temptation to second-guess counsel's decisions, counsel is "'strongly

14   presumed to have rendered adequate assistance and made all significant decisions in the exercise

15   of reasonable professional judgment.'" *Pinholster*, 131 S. Ct. at 1403 (*quoting Strickland*, 466

16   U.S. at 690). The courts must "begin with the premise that 'under the circumstances, the

17   challenged action[s] might be considered sound trial strategy.'" *Id.* at 1404 (*quoting Strickland*,

18   466 U.S. at 689).

19         Under the second prong, the petitioner must prove prejudice from counsel's

20   representation. *Pinholster*, 131 S. Ct. at 1403. It is not enough that counsel's errors had "some

21   conceivable effect on the outcome." Rather, the petitioner must show "that, but for counsel's

22   unprofessional errors, the result would have been different." *Strickland*, 466 U.S. at 693-94.

23

24

"That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403 (*quoting Richter*, 131 S. Ct. at 791).

### b.   The State Court's Determination Was Reasonable

On direct appeal, petitioner argued that the combined effect of the prejudice to defense counsel's credibility and the "removal" of Mr. Berneburg denied petitioner his right to a fair trial and the effective assistance of counsel. Dkt. 15, Exhibit 11 at 11-15. In his appeal brief, petitioner argued:

> From [Hernandez's] testimony, the jury was given the impression that the defense attorneys, and by association Contreras, would lie and encourage perjury in order to win acquittal. By injecting the issue of defense counsel's credibility into the case, Contreras was placed in the untenable position of choosing between allowing this impression to stay in the minds of the jury, or having to call one of his attorneys to testify at trial. … Although the trial court gave a limiting instruction, it could not cure the enormous prejudice caused by Hernandez's testimony and the prosecution's attempts to show that the defense did encourage her to commit perjury.

*Id*. at 14-15.

The Washington Court of Appeals disagreed with petitioner's assessment of the degree of prejudice stemming from Ms. Hernandez's testimony and rejected his argument that the prejudice was incurable:

> Trial courts should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can insure that [the] defendant will be tried fairly." … The trial judge is best situated to assess the prejudice of a statement. … When an irregularity occurs at trial, we review the irregularity to determine whether it may have influenced the jury. … To determine the effect of the trial irregularity, we examine (1) the seriousness of the irregularity; (2) whether the irregularity was cumulative of other evidence properly admitted; and (3) whether the trial court could cure the irregularity by an instruction to disregard the remark . . . .
>
> Here, Berneburg said in his opening statement that Solis's vehicle's headlights were off, but Hernandez testified on cross that Berneburg told her to say that Solis's vehicle's headlights were off. … Contreras argues that Hernandez's allegations made the jury question Berneburg's credibility. However, in denying

1    Contreras's motion for a mistrial, the trial court found that the issue was
     Hernandez's credibility, not Berneburg's. "The material issue, it seems to me, is
2    Ms. Hernandez and her credibility and what she saw .... I don't think anybody is
     accusing Mr. Berneburg ... [of] committing a felony." RP (Jan. 25, 2007) at 682.
3    Notably, the record supports the trial court's finding: on direct, Hernandez
     testified that Berneburg *did not* tell her to testify that Solis's headlights were off,
4    whereas on cross, she testified that Berneburg *told* her to testify that Solis's
     headlights were off. Contreras cannot show that there is a substantial likelihood
5    that Hernandez's testimony prejudiced him to such an extent that nothing short of
     a new trial could ensure fairness. … In this case, even if Hernandez's testimony
6    slightly prejudiced Contreras, the trial court took appropriate curative steps by
     permitting Berneburg to testify to rebut Hernandez's allegation and by limiting
7    Berneburg's testimony with the following instruction:

8           Before the testimony of Mr. Berneburg is allowed, the Court
            advises you that you may consider the testimony regarding Mr.
9           Berneburg's contact with Regina Hernandez only for the purpose
            of assessing her credibility. You must not consider the testimony
10          for any other purpose.  RP (Jan. 25, 2007) at 812-13.

11   Berneburg's testimony served to rebut Hernandez's allegation and the instruction
     limited the scope of his testimony to the purpose of assessing Hernandez's
12   credibility. Juries are presumed to follow the trial court's instructions. … Thus,
     the trial court's curative steps cured any prejudice Hernandez's testimony may
13   have created, further supporting our conclusion that Contreras received a fair trial.

14   Dkt. 15, Exhibit 14 at 6, 8-9 (emphasis in original) (footnotes and citations omitted).

15         The Washington Court of Appeals also rejected petitioner's claim that the trial court's

16   actions denied him the right to effective assistance of counsel:

17          Contreras also argues that the trial court denied his right to effective assistance of
            counsel in excluding Berneburg from the courtroom. The constitutional right to
18          counsel promises a defendant an attorney who can provide "reasonably effective
            assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.
19          Ed. 2d 674 (1984). We give exceptional deference to counsel's decisions and such
            decisions cannot serve as a basis for an ineffective assistance of counsel claim if
20          counsel's decisions are a legitimate trial strategy or tactic. *State v. McNeal*, 145
            Wn.2d 352, 362, 37 P.3d 280 (2002). Here, Schoenberger represented Contreras
21          at all times during the trial, and the trial court only excluded Berneburg when the
            defense requested that the trial court add him to the witness list. The defense
22          sought Berneburg as a witness to rebut Hernandez's testimony, which was a
            legitimate trial strategy and this strategic action did not deny Contreras his right to
23          effective assistance of counsel.

24   Dkt. 15, Exhibit 14 at 9-10.

REPORT AND RECOMMENDATION - 20

**i. Trial Record Supporting State Court's Denial of Motion For A Mistrial**

Respondent argues that the Court of Appeals' decision on claim 1 (ground 1) was neither contrary to nor an unreasonable application of clearly established United States Supreme Court precedent, and it was based on a reasonable reading of the trial record. Dkt. 14 at 22. Respondent argues the trial judge observed that Ms. Hernandez's claim (that she was coached) bore on her credibility, not Berneburg's.  Ms. Hernandez testified on direct examination that Mr. Berneburg did not tell her to testify that Solis's headlights were off, yet on cross-examination she insisted that Berneburg did tell her to testify that Solis's headlights were off. *See* Dkt. 15,  Exhibit 4 at 299-300 (direct) compared with *id*. at 304-06 (cross).

The relevant trial court record considered by the Washington State Court of Appeals focused on Ms. Hernandez's testimony ,as a prosecution witness at trial. At the time of her testimony, Ms. Hernandez was a state prisoner and was temporarily housed at the jail during petitioner's trial. Dkt. 15, Exhibit 4 at 227-28. The prosecutor questioned her extensively about her and petitioner's activities on April 11-12, 2006. *Id*. at 229-304. She described the moments leading up to the shooting, when she and petitioner were seated in his car:

> [Prosecutor]: And you see a car coming?
> [Hernandez]: Coming.
> Q: Then what happens?
> A: The headlights were out, but the other side of the lights were on. You understand?
> Q: Well, you tell me.
> A: Like these are the main lights. They're off, but the outside are on, like the single lights, and I wasn't giving the car too much attention because I'm looking at the CD's, but all I remember is Adrian saying, "There those mother fuckers are," and I heard gunshots. And then I looked back out the window, and the car brakes were on, and the car slowed down. I seen no heads or nothing, but to be honest, I thought it was somebody like an older person. I didn't know who it was.

Dkt. 15, Exhibit 4 at 289.

During a recess, Ms. Hernandez was provided a copy of the statement she gave to the

1    police the day after the shooting. *Id*. at 297-98.  When she resumed the witness stand, the direct

2    examination continued and the prosecutor questioned her again, without any objections from the

3    defense, about whether the headlights on Solis's car were on or off immediately before the

4    shooting:

> [Prosecutor]: Are there things in that statement that are different than what you
> testified to this morning?
> [Hernandez]: A little bit.
> Q: One thing I want to bring up first is the issue of whether you saw headlights on
> the approaching vehicle as you described. Did you actually see them?
> A: I didn't see the vehicle until I looked back at the brake lights.
> Q: Why did you say earlier that you actually saw the side lights?
> A: I wasn't –
> Q: The defense attorney?
> A: Yes, he told me that when he came to visit.
> Q: When did he visit you?
> A: The day before yesterday.
> Q: He didn't tell you to say that, did he?
> A: No.
> Q: Did he tell you –
> A: That the lights were off.
> Q: And my question then is: What is the truth, what he told you –
> A: The truth is what I said in the statement. I didn't see the car coming; I only
> seen the brake lights.

15   Dkt. 15, Exhibit 4 at 299-300.

16       Next, Ms. Hernandez was cross-examined by defense counsel Schoenberger, who

17   questioned Hernandez about her recent interview with Schoenberger and co-counsel Berneburg

18   at the jail:

> [Defense counsel]: We met this last Sunday didn't we?
> [Hernandez]: Mm-hmm.
> Q: And Mr. Berneburg and I came and talked with you, didn't we?
> A: Yes, sir.
> Q: And we didn't tell you the headlights were off, did we? We said were the
> headlights on or off; isn't that right?
> A: Mr. Berneburg told me that the headlights were off and to say that when I got to
> court.
> Q: Didn't you respond that when the lights are off they do that when they're doing a
> drive-by shooting?

A: Yes I did say that. You asked me what does the term mean.

Q: What does that term mean?

A: When they drive with their lights off and I answered your question.

Q: But it's your testimony that Mr. Berneburg told you to say that the lights were off?

A: Yes, sir.

Q: Didn't Mr. Berneburg and I make a big point of telling you that it's important that you just tell the truth and we'll deal with that?

A: Mm-hmm.

Q: And we did tell you that, didn't we?

A: Yes, sir to tell the truth.

Q: Several times?

A: Yes.

Q: So you told us as you told the officers that you were looking through CD's and you didn't see the car until there was a shooting?

A: That's the truth.

Q: So yet you're telling the jury today that Mr. Berneburg told you to say –

A: That the lights were off, yes, sir.

Q: And you're pretty sure that he told you to say that?

A: Yes.

Dkt. 15, Exhibit 4 at 304-06.

Mr. Schoenberger requested – two days after Ms. Hernandez's testimony–that he be allowed to call Mr. Berneburg as a witness to rebut Ms. Hernandez's assertion that she was coached. Dkt. 15, Exhibit 6 at 674. The trial court allowed him to do so but also ruled that Mr. Berneburg, as a potential witness, would not be allowed to further participate in the trial. Dkt. 14 at 22.  Respondent argues that this was proper and that no clearly established Supreme Court precedent obligated the trial court to order a mistrial under these circumstances or to allow the attorney (or both attorneys) to testify as a witness while simultaneously continuing to serve as an advocate. *Id*. at 22-23.

The state court also considered other evidence relating to Solis's headlights on the night of the shooting.  For example, other prosecution witnesses had testified that Solis's headlights were still on at the time after the shooting when his car drifted into a nearby yard. *See* Dkt. 15, Exhibit 3 at 103 (testimony of Kim Say-Ye, who lived next door to the residence where the car

was found); *id*. at 195-96 (testimony of Timothy Caber, the first police officer on the scene). In

contrast, petitioner claimed that Solis turned his headlights off as he approached petitioner's

vehicle, which he interpreted to mean that a drive-by shooting was about to occur. Dkt. 15,

Exhibit 7 at 872.

    In closing argument, the prosecutor touched upon Ms. Hernandez's testimony (*see* Dkt.

15, Exhibit 8 at 991-93), but he did not refer to her claim that Mr. Berneburg told her what to

say about the headlights. Defense counsel told the jury that whether the headlights were on or off

was not significant to petitioner's claim of self-defense: "Don't be taken in by this headlight

thing. It might be a red herring. Maybe the headlights were on the whole time." Dkt. 15, Exhibit

8 at 1003-04. The prosecutor disagreed and argued in rebuttal that the headlight issue was not a

red herring, *id*. at 1018-19, but he again refrained from repeating Ms. Hernandez's allegation

about Mr. Berneburg coaching her.

### ii.   Berneburg's Participation Was Limited

    From the beginning, Mr. Berneburg's role in petitioner's defense at trial appeared to be a

limited one and that Mr. Schoenberger was the primary counsel for petitioner.  For instance, Mr.

Berneburg was not present for any of the pretrial proceedings or *voir dire* on January 17 and 18,

2007. *See* Dkt. 15, Exhibits 1 and 2. Mr. Schoenberger advised the trial court on January 17 that

"Mr. Berneburg has come in and associated as co-counsel. He is, unfortunately, conducting a

trial as we speak in Lewis County and expects to be done today or tomorrow by noon, and Mr.

Rebollar has elected to proceed without Mr. Berneburg until he can join us at whatever time he's

able to." Dkt. 15, Exhibit 1 at 3.  Mr. Berneburg was not present in court during Ms. Hernandez's

testimony on January 23, 2007. On January 23, 2007, Mr. Schoenberger explained to the court

(immediately prior to Ms. Hernandez's testimony) that Mr. Berneburg would thereafter not be a

1   participant in the trial at all: "Mr. Berneburg's role will most likely be in the background now

2   and probably will not be appearing in court." Dkt. 15, Exhibit 4 at 226. Mr. Berneburg had been

3   present the day before (January 22) and conducted the cross-examination of three of the State's

4   witnesses (*see* Dkt. 15, Exhibit 3 at 155-57, 165-71, and 179-82), but he was not in attendance

5   again at trial until January 25, 2007, the day the defense brought its mistrial motion.

6        On January 25, 2007, two days after Hernandez's testimony, the defense moved for a

7   mistrial based on Ms. Hernandez's claim on cross-examination that Mr. Berneburg told her to

8   say the lights were out on Solis's vehicle. Dkt. 15, Exhibit 6 at 674. The defense wanted to call

9   Mr. Berneburg as a defense witness to rebut Ms. Hernandez's testimony and also to call Mr.

10  Schoenberger to endorse Mr. Berneburg's rebuttal testimony. *Id*. (Mr. Schoenberger stated:

11  "[W]e can't let the jury have this impression that defense counsel have in any way tampered with

12  any witness, let alone this one. I think it taints the entire case."). *Id.*

13       The prosecutor recommended that instead of a mistrial, the court could give a curative

14  instruction advising the jury to disregard that part of Ms. Hernandez's testimony in which she

15  stated that Mr. Berneburg had told her how she should testify. *Id*. at 678-79. The court denied

16  defense's request for a mistrial but indicated that Mr. Berneburg would be allowed to testify in

17  rebuttal. *Id*. at 682. The court noted that the real issue was Mr. Hernandez's credibility, not

18  Berneburg's. *Id*. ("The material issue, it seems to me, is Ms. Hernandez and her credibility and

19  what she saw."). However, because he would be a witness in the case, the court indicated Mr.

20  Berneburg would be treated as any other potential witness and excluded him from the courtroom.

21  *Id.* at 683-84.

22

23

24

1   On January 29, 2007, Mr. Berneburg testified about what Ms. Hernandez told him during

2   his pretrial interview with Ms. Hernandez at the county jail. Dkt. 15, Exhibit 7 at 812-29.

3   ### iii.  Limiting Instruction Prior to Berneburg's Testimony

4   Mr. Berneburg testified that during his pretrial interview with Ms. Hernandez at the

5   county jail, she told him that the headlights on Solis's car were off at the time of the shooting.

6   Dkt. 15, Exhibit 7 at 815. Prior to Mr. Berneburg's testimony, the court gave the jury the

7   following limiting instruction: "Before the testimony of Mr. Berneburg is allowed, the Court

8   advises you that you may consider the testimony regarding Mr. Berneburg's contact with Regina

9   Hernandez only for the purpose of assessing her credibility. You must not consider the testimony

10  for any other purpose." *Id.* at 812-13. The court instructed the jury <u>again</u> at the conclusion of trial

11  that "you may consider the testimony regarding Mr. Berneburg's contact with Regina Hernandez

12  only for the purpose of assessing her credibility. You must not consider the testimony for any

13  other purpose." *See* Dkt. 15, Exhibit 59 at App. G, Instruction No. 4.

14  ### c.    Conclusion Regarding the Merits of Claim 1

15  The Court of Appeals' decision on ground 1 (claim 1) was neither contrary to nor an

16  unreasonable application of clearly established United States Supreme Court precedent, and it

17  was based on a reasonable reading of the trial record. The trial judge correctly observed that Ms.

18  Hernandez's claim that she was coached bore on her credibility, not Mr. Berneburg's.  Ms.

19  Hernandez's testimony on direct and cross was inconsistent. Ms. Hernandez was a habitual

20  methamphetamine user who admitted to having a poor memory.  Dkt. 15, Exhibit 2 at 238, 241.

21  Ms. Hernandez testified that she often hallucinates and hears things when she is "on a come-

22  down" from taking drugs.  *Id.* at 241.  The trial judge properly excluded Mr. Berneburg, who

23  played a minor role on the defense team compared to Mr. Schoenberger.  Finally, the trial judge

24

properly instructed the jury with a limiting instruction directing the jury to limit the scope of Mr. Berneburg's testimony to the purpose of assessing Ms. Hernandez's credibility.  This was an appropriate instruction tailored to the circumstances of petitioner's case.

As to petitioner's claim that it was ineffective assistance of counsel to exclude Mr. Berneburg from the case, the Court finds the state court's determination, that it was not ineffectiveness but rather a legitimate trial strategy, was a reasonable determination. The defense sought Mr. Berneburg as a witness to rebut Ms. Hernandez's testimony, which was a legitimate trial strategy that did not deny petitioner his right to effective assistance of counsel.  Mr. Berneburg's role was minor and the petitioner has not shown that Mr. Schoenberger's performance (without Mr. Berneburg's presence for most of pretrial and trial proceedings) was so deficient that it "fell below an objective standard of reasonableness" under *Strickland*. Second, the petitioner has failed to show the alleged deficient performance prejudiced his defense so "as to deprive the defendant of a fair trial, a trial whose result is unreasonable."  The petitioner must satisfy both prongs to prove his claim of ineffective assistance of counsel, which he has not. The Court finds that the state court's adjudication is not contrary to or an unreasonable application of the federal law.

Thus, this Court recommends that habeas relief be denied as to petitioner's first ground for relief (Claim 1).

2. *Ground 2 – Ineffective Assistance of Counsel (Claim 2)*

In his second ground for relief, petitioner alleges that trial counsel was ineffective when he failed to provide a "defense of another" jury instruction. Dkt. 5 at 7. Petitioner alleges that he was acting in defense of Ms. Hernandez when he shot Mr. Solis. *Id.* Respondent argues that trial

counsel offered an instruction on petitioner's defense – self-defense – and argued in his closing argument that petitioner also shot Solis in defense of Ms. Hernandez. Dkt. 14 at 24.

The Washington Court of Appeals considered this claim in petitioner's first appeal and concluded the claim was without merit:

> [D]efense counsel's decision not to propose a "defense of another" instruction to the jury could have been a tactical decision to focus Contreras's self defense case theory. For example, Contreras argues in his SAG that he was defending Hernandez; however, she was a witness for the State who testified that Contreras did not appear afraid during the shooting and that he said "I just dumped on those fools" after the shooting. RP (Jan. 23, 2007) at 290. In light of her adverse testimony, defense counsel's decision not to propose this instruction was likely a tactical decision to focus on Contreras's stronger self defense theory.

Dkt. 15, Exhibit 14 at 14.

Petitioner complains that his counsel was ineffective for the absence of the "defense of other" instruction in the final jury instructions. Respondent notes that although petitioner personally complained at trial that the proposed instructions were a "fiasco" and stated he was unsatisfied with them (Dkt. 15, Exhibit 8, at 972-74), he did not complain about the lack of a separate "defense of another" instruction then. Dkt. 14 at 27-28. Rather, the only specific alleged problem petitioner identified in the proposed instructions was the potential to mislead the jury to believe he was only entitled to self-defense if he had been in actual danger of personal injury. *Id.* at 973. Respondent asserts that Instruction 19 did speak to actual danger being unnecessary for the use of force to be lawful:

> A person is entitled to act on appearance in defending himself if that person believes in good faith and on reasonable grounds that he is in actual danger of great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

Dkt. 15, Exhibit 59 at Appendix G.

Both parties proposed their own jury instructions and discussed them at length with the court. Dkt. 15, Exhibit 7 at 929-67. The defense did not object to the proposed self-defense instruction, *id*. at 940, but did object to the State's proposed "initial aggressor" instruction, which the court declined to give anyhow. *Id*. at 942-43.

Ms. Hernandez, testifying as a prosecution witness, stated during trial that petitioner said just prior to shooting, "[t]here those mother fuckers are" and then a short while later petitioner stated, "I just dumped on those fools." Dkt. 15, Exhibit 4 at 289-90. Further, Ms. Hernandez testified that petitioner did not appear to be at all scared and seemed "calm and cool." *Id*. at 290. Ms. Hernandez's testimony, therefore, was not helpful to the "defense of other" theory.

In closing argument, defense counsel focused on the issue of self-defense. Despite the testimony from Ms. Hernandez regarding petitioner's lack of fear and statements about Solis and his passenger, defense counsel did state that petitioner's secondary intent was to defend Ms. Hernandez from danger. *See* Dkt. 15, Exhibit 8 at 1006 ("There can be no doubt that Adrian was defending himself and Regina, his passenger"); *id*. ("Nothing has been offered in evidence to suggest that Adrian was not justified in using a firearm to defend himself and Regina Hernandez."); *id.* at 1008 ("Adrian's only intent was to forestall an attack on himself and Regina and get away."); *id*. at 1011 ("I believe after you consider all the evidence, … you must conclude that Adrian was defending himself and Regina Hernandez from an obvious and imminent threat"). The prosecutor did not object to defense counsel's references to petitioner's alleged defense of another (Ms. Hernandez) or argue that such actions would not have been the lawful use of force.

1    The trial court instructed the jury on the lawful use of force and self-defense. *See* Dkt.

2    15, Exhibit 59, Appendix G, Instructions 18-20. Defense counsel had no objection to the court's

3    final instructions and did not request any additional ones. Dkt. 15, Exhibit 8 at 972, 974.

4    Respondent argues, as found by the Washington Supreme Court, that petitioner cannot

5    satisfy the first prong to show ineffective assistance of counsel. The Court agrees.  Because this

6    is a habeas case under 28 U.S.C. § 2254, "[t]he pivotal question is whether the state court's

7    application of the *Strickland* standard was unreasonable. This is different from asking whether

8    defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562

9    U.S. 86, 101 (2011). Under the § 2254(d) standard, petitioner must affirmatively demonstrate

10   that it was *necessarily unreasonable* for the Washington Court of Appeals to have rejected his

11   *Strickland* claim. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

12   Under this set of facts, petitioner does not show, nor does the Court find, that the state

13   court confronted facts which were materially indistinguishable from a relevant United States

14   Supreme Court precedent and arrived at the opposite result or that the state court unreasonably

15   applied the correct legal standard to the facts of petitioner's case. In sum, petitioner fails to

16   demonstrate the state court's adjudication of his claim was contrary to or an unreasonable

17   application of clearly established federal law as determined by the United States Supreme Court,

18   or to otherwise demonstrate any violation of his constitutional rights.  Thus, the Court should

19   deny habeas relief as to petitioner's second ground for relief.

20

## I.    CERTIFICATE OF APPEALABILITY

21

22   A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

23   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

24   (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

The Court recommends denying grounds 1 and 2 claims as petitioner has failed to demonstrate that the state court's adjudication of his claims was contrary to, or an unreasonable application of federal law. The Court recommends dismissing without prejudice grounds 3 and 4 as unexhausted. The Court recommends denying the issuance of a certificate of appealability.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **September 23, 2016**, as noted in the caption.

Dated this 29th day of August, 2016.

J. Richard Creatura
United States Magistrate Judge