1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10    ADRIAN CONTRERAS-REBOLLAR,

11                        Petitioner,          CASE NO. 3:15-cv-05471 BHS-JRC

12             v.                               REPORT AND RECOMMENDATION

13    JAMES KEY,                                NOTED FOR:  JUNE 9, 2017

14                        Respondent.

15

16         Petitioner filed the petition pursuant to 28 U.S.C. § 2254.  Petitioner's first ground for

17    relief was re-referred for the undersigned's consideration, in which petitioner is challenging

18    whether or not his Sixth Amendment right to counsel of choice was violated.

19         At trial, petitioner was represented by two attorneys -- one appointed and one retained.

20    Petitioner's retained counsel was designated as a witness to rebut another witness's testimony.

21    However, because petitioner was represented by his appointed counsel at all stages of the trial

22    and it was the defense's suggestion to designate petitioner's retained counsel as a witness, the

23    Court finds that the state court's decision to exclude petitioner's retained counsel from

24

participation in trial did not violate petitioner's Sixth Amendment right to counsel of choice. The undersigned recommends denying petitioner's first ground for relief.

## BACKGROUND

On August 29, 2016, the undersigned entered a Report and Recommendation, recommending that the petition be denied as to grounds 1 and 2 because petitioner failed to demonstrate that the state court's adjudication of his claims was contrary to, or an unreasonable application of federal law. Dkt. 38. The undersigned recommending dismissing without prejudice grounds 3 and 4 as unexhausted. *Id.*

On January 17, 2017, District Judge Settle adopted the Report and Recommendation in part, and re-referred for the undersigned's consideration, petitioner's first ground for relief challenging whether petitioner was denied his right to his counsel of choice in violation of the Sixth Amendment. Dkt. 49 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 145 (2006)). On January 19, 2017, the undersigned ordered the parties to file supplemental briefing regarding petitioner's first ground for relief. Dkt. 50. Petitioner's first ground for relief is now ready for the undersigned's review.

In its prior Report and Recommendation, the undersigned outlined the procedural history. *See* Dkt. 38 at 1-13. It is not necessary to reiterate the same background here, and turns directly to the merits of petitioner's first ground for relief.

//
//
//
//
//

1

### BASIS FOR CUSTODY AND FACTS

2

The Washington Court of Appeals summarized the facts in petitioner's case as

3

follows:

4

On the afternoon of April 11, 2006, Contreras,[1] Nicholas Solis, Regina Hernandez, and Ahria Kelly were at a friend's house in Tacoma where they drank alcohol and smoked methamphetamine. Contreras, Solis, Hernandez, and Kelly disagree as to some of what followed that evening.

5

6

7

Around five or six o'clock in the evening, Contreras, Solis, Hernandez, and Kelly left their friend's house and went to a place described as "Wolfie's alley," so Solis could pick up a vehicle. Report of Proceedings (RP) (Jan. 23, 2007) at 254. Contreras and Hernandez left Wolfie's alley to go drive around; Solis and Kelly followed in the car that Solis had just retrieved. Hernandez alleged that Contreras flagged Solis to stop, got out of his vehicle, and argued with Solis about a "sack of dope" and a Palm Pilot. RP (Jan. 23, 2007) at 259. According to Hernandez, Contreras returned to his vehicle, said, "[T]his mother fucker is getting on my nerves; I'm going to do him in[,]" and retrieved a gun from the backseat of the car. RP (Jan. 23, 2007) at 261. After going back to Wolfie's alley,[2] Contreras and Hernandez subsequently drove to Yessica Rosas's house.

8

9

10

11

12

After arriving at Rosas's house, Rosas and Hernandez were talking in Rosas's bedroom when Contreras went outside to his car. Contreras returned wearing dark clothes and sunglasses, carrying a gun. Rosas testified that Contreras appeared nervous and looked like he was wearing a disguise. Rosas's father, Jose Rosas, heard people talking and he asked Hernandez and Contreras to leave. Jose testified that he watched Hernandez and Contreras drive away before returning to bed.

13

14

15

Contreras sat in the driver's seat and Hernandez sat in the front passenger seat when they left Rosas's house. Hernandez testified that she was looking at CDs when she heard Contreras say, "[T]here those mother fuckers are." RP (Jan. 23, 2007) at 289. The two were only a short distance from Rosas's house when Contreras started shooting at the oncoming vehicle. After Contreras finished shooting, Hernandez heard him say, "I just dumped on those fools." RP (Jan. 23, 2007) at 290. Hernandez testified that Contreras did not appear afraid; instead, he appeared brave, calm, and cool. Further, Hernandez testified that she had her head down looking at CDs and did not see Solis's vehicle approach; she looked up after Contreras started shooting

16

17

18

19

20

21

---

[1] Petitioner's last name is Contreras-Rebollar, but the Washington Court of Appeals referred to petitioner as "Contreras" throughout its opinion.

22

[2] Hernandez claimed that, during their second visit to Wolfie's alley, Solis, while wearing a bandana over his face, pointed a gun at Contreras who responded by firing shots in Solis's direction. Kelly, however, testified that he did not see Solis wearing a bandana over his face or see Contreras and Solis pull guns on each other. [state court footnote]

23

24

REPORT AND RECOMMENDATION - 3

and saw only the taillights of Solis's vehicle. Contreras, however, relayed a different story at trial. Contreras claimed that he saw Solis's vehicle speed up and the headlights turn off. He also claimed to see Solis wearing a bandana[3] and raise the barrel of a gun. Based on this information, Contreras believed that Solis was preparing to commit a drive-by shooting. Contreras testified that he feared for his life, reached for his gun, ducked, and fired towards Solis's vehicle.

Solis was driving with Kelly in the passenger seat when Contreras shot at them. Kelly testified that he yelled "[d]uck" when he saw the flash of a gun firing from the driver's window of a parked vehicle with no headlights. RP (Jan. 24, 2007) at 501. Solis did not see Contreras's vehicle and only remembered seeing gunfire sparks at the time of the shooting. One bullet struck Kelly in the shoulder and at least one bullet struck Solis. As a result of the shooting, Solis is paralyzed from the chest down.

Shortly after the shooting, Kim Say-Ye was returning home when she saw a vehicle parked on the grass in front of her neighbor's house. The vehicle caught her attention because she saw shattered glass and because both the windshield wipers and headlights were on. She thought the driver was drunk and was about to call the police when Officer Timothy Caber showed up.

Caber, who had received the dispatch call for the shooting around 1:00 a.m., briefly spoke to Say-Ye when he arrived at the scene. Caber found the vehicle still running and stopped against landscaping railroad ties on the lawn. He also observed that the windshield wipers and headlights were on. Caber found Solis inside, slumped over; a rifle lay wedged between the driver and passenger seats with the barrel pointing toward the dash.

Edward Robinson, a firearm examiner at the Washington State Patrol Crime Laboratory, determined that the gun was a black powder rifle. Robinson received the rifle without a ram rod and without any wadding, projectiles, and gun powder inside the rifle's chamber or otherwise in a container associated with the rifle. Solis testified that he traded dope for the rifle on the day of the shooting and that he thought the rifle was inoperable.

On April 12, 2006, the police arrested Contreras at a Motel 6. The State charged him with two counts of first degree assault, with firearm enhancements, and one count of second degree unlawful possession of a firearm.

…

---

[3] Hernandez testified that Surenos tie bandanas over their faces when they are preparing to commit a drive-by shooting or assault. [state court footnote]

On February 1, 2007, the jury found Contreras guilty on both counts of first degree
assault and found that he was armed with a firearm during the commission of both
crimes.

Dkt. 15, Exhibit 14 at 2-5.

### GROUND ONE – SIXTH AMENDMENT RIGHT TO CHOICE OF COUNSEL

Petitioner contends that his Sixth Amendment right to choice of counsel was violated
when one of his attorneys, retained counsel Jay Berneburg, was excluded from participating in
the trial once he was designated as a defense witness. Dkt. 5 at 6. In his first ground for relief,
petitioner argues:

The trial [court] abused its discretion when it took direct arbitrary action against
Petitioner's defense team he had composed when it excluded petitioner's retained
co-counsel of choice [Berneburg]. Petitioner privately retained said co-counsel
[Berneburg] with his family's personal expenses when he (co-counsel) [Berneburg]
was excluded in the middle of trial from defending Petitioner. Without a proper
adjudication by the trial [court] citing any reasons for having done so before it took
said action.

Dkt. 5 at 6.

The Washington Court of Appeals outlined the background on plaintiff's two
attorneys as follows:

During his state court trial, Contreras was represented by two attorneys, retained
counsel [Jay] Berneburg and appointed counsel James Schoenberger. Dkt. 15,
Exhibit 14 at 4. On November 30, 2006, defense counsel Jay Berneburg filed a
notice of association in this case. Contreras hired Berneburg to supplement
appointed counsel James Schoenberger at trial. At trial, Berneburg gave the opening
statement and cross examined three witnesses. He also assisted Schoenberger with
preparations outside of trial. On January 17, 2007, Contreras pleaded guilty to
second degree unlawful possession of a firearm.

On January 17, 2007, trial began. Both parties focused on credibility throughout
the trial, as many of the witnesses were habitual methamphetamine users who
admitted to having a poor memory.[4] On January 23, 2007, Hernandez testified that
she did not see the headlights on Solis's vehicle. When the prosecution questioned
her, Hernandez acknowledged that her testimony conflicted with a statement she

---

[4] For example, Hernandez testified that she often hallucinates and hears things when she
is "on a come-down" from taking drugs. RP (Jan. 23, 2007) at 241. [state court footnote]

1
2
3
4

made to police officers shortly after the shooting. However, she claimed that Berneburg had told her the headlights were off. On direct, Hernandez denied that Berneburg told her to say the headlights were off, but on cross examination she claimed he had. On January 25, 2007, Contreras argued that Hernandez's testimony shattered his counsel's credibility and moved for a mistrial. The trial court denied the motion, but agreed to add Berneburg to Contreras's witness list for the sole purpose of rebutting Hernandez's allegation. Now a witness, the trial court excluded Berneburg from the courtroom.

5

Dkt. 15, Exhibit 14 at 4 -5.

6
7
8

    The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. An

9
10

element of this right is the defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (*quoting*

11
12

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)); *see also Powell v.*

13
14

*Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). The erroneous denial of the right to counsel of choice qualifies as structural error; that

15
16

is, the defendant who establishes that his right to counsel of choice was violated need not demonstrate prejudice in order to be entitled to relief, as would a defendant who is claiming that

17
18

counsel provided ineffective assistance. *Gonzalez-Lopez*, 548 U.S. at 150. "[T]he right at stake here is the right to counsel of choice, not the right to a fair trial; and that right was violated

19
20

because the deprivation of counsel was erroneous. No additional showing of prejudice is required to make the violation 'complete.'" *Id*. at 146.

21
22

    However, the right to counsel of choice is "circumscribed in several important respects."

23
24

*Wheat v. United States*, 486 U.S. 153, 159 (1988). A defendant does not have the right to be represented by (1) an attorney he cannot afford, (2) an attorney who is not willing to represent

REPORT AND RECOMMENDATION - 6

1   him, (3) an attorney who has a conflict of interest, or (4) a person (other than himself) who is not

2   a member of the bar.  *Id.*  A trial court has "wide latitude in balancing the right to counsel of

3   choice against the needs of fairness, … and against the demands of its calendar."  *Gonzalez-*

4   *Lopez*, 548 U.S. at 152 (*citing Wheat*, 486 U.S. at 163-64; *Morris v. Slappy*, 461 U.S. 1, 11-12

5   (1983)).  Thus, trial courts have the discretion to make scheduling and other decisions that may

6   have the effect of excluding a defendant's first choice of counsel.  *Id.*

7          On appeal, the Washington Court of Appeals affirmed the trial court's decision to deny

8   the motion for mistrial:

9          Here, Berneburg said in his opening statement that Solis's vehicle's headlights were
           off, but Hernandez testified on cross that Berneburg told her to say that Solis's
10         vehicle's headlights were off. … Contreras argues that Hernandez's allegations
           made the jury question Berneburg's credibility. However, in denying Contreras's
11         motion for a mistrial, the trial court found that the issue was Hernandez's
           credibility, not Berneburg's. "The material issue, it seems to me, is Ms. Hernandez
12         and her credibility and what she saw .... I don't think anybody is accusing Mr.
           Berneburg ... [of] committing a felony." RP (Jan. 25, 2007) at 682. Notably, the
13         record supports the trial court's finding: on direct, Hernandez testified that
           Berneburg *did not* tell her to testify that Solis's headlights were off, whereas on
14         cross, she testified that Berneburg *told* her to testify that Solis's headlights were
           off. Contreras cannot show that there is a substantial likelihood that Hernandez's
15         testimony prejudiced him to such an extent that nothing short of a new trial could
           ensure fairness. … In this case, even if Hernandez's testimony slightly prejudiced
16         Contreras, the trial court took appropriate curative steps by permitting Berneburg
           to testify to rebut Hernandez's allegation and by limiting Berneburg's testimony
17         with the following instruction:

18                Before the testimony of Mr. Berneburg is allowed, the Court advises
                  you that you may consider the testimony regarding Mr. Berneburg's
19                contact with Regina Hernandez only for the purpose of assessing her
                  credibility. You must not consider the testimony for any other
20                purpose.

21         RP (Jan. 25, 2007) at 812-13. Berneburg's testimony served to rebut Hernandez's
           allegation and the instruction limited the scope of his testimony to the purpose of
22         assessing Hernandez's credibility. Juries are presumed to follow the trial court's
           instructions. … Thus, the trial court's curative steps cured any prejudice
23         Hernandez's testimony may have created, further supporting our conclusion that
           Contreras received a fair trial.

24

Dkt. 15, Exhibit 14 at 6, 8-9 (emphasis in original) (footnotes and citations omitted).

The Washington Court of Appeals also rejected petitioner's argument that he was denied effective assistance of counsel:

> Contreras also argues that the trial court denied his right to effective assistance of counsel in excluding Berneburg from the courtroom. The constitutional right to counsel promises a defendant an attorney who can provide "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We give exceptional deference to counsel's decisions and such decisions cannot serve as a basis for an ineffective assistance of counsel claim if counsel's decisions are a legitimate trial strategy or tactic. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). Here, Schoenberger represented Contreras at all times during the trial, and the trial court only excluded Berneburg when the defense requested that the trial court add him to the witness list. The defense sought Berneburg as a witness to rebut Hernandez's testimony, which was a legitimate trial strategy and this strategic action did not deny Contreras his right to effective assistance of counsel.

Dkt. 15, Exhibit 14 at 9-10.

Petitioner now characterizes Berneburg's exclusion from the courtroom as a witness as a denial of his right to counsel of choice. Dkt. 5 at 4. However, the trial court record reflects that the defense chose to have Berneburg testify as a rebuttal witness. Dkt. 15, Exhibit 6 at 674. In fact, the prosecution recommended instead that the trial court give a curative instruction advising the jury to disregard Hernandez's testimony as to whether Berneburg had told her how to testify. *Id.* at 678-79. The trial court ultimately granted the defense's request to call Berneburg as a witness, but advised the parties that he would be treated like any other witness, precluded Berneburg from serving as petitioner's counsel, and excluded him from the courtroom. *Id.* at 683-84.

As respondent points out, Washington Rule of Professional Conduct 3.7 prohibits attorneys from proceeding in a dual capacity as advocate and witness in the same proceeding. Dkt. 52 at 5-6 (citing RPC 3.7(a)). The Ninth Circuit has held that the advocate-witness rule

1   "expresses an institutional concern, especially pronounced when the government is a litigant, that

2   public confidence in our criminal justice system not be eroded by even the appearance of

3   impropriety." *United States v. Rangel-Guzman*, 752 F.3d 1222, 1225 (9th Cir. 2014) (quoting

4   *United States v. Prantil*, 764 F.2d 548, 553 (9th Cir. 1985)). "The advocate-witness rule

5   generally admits of only one solution to avoid the improprieties inherent in advocate testimony.

6   Attorneys must elect in which capacity they intend to proceed, either as counsel or as a witness,

7   and promptly withdraw from the conflicting role." *Prantil*, 764 F.2d at 553.

8          Nothing in the record suggests that Berneburg was forced to testify at trial, and in fact,

9   the defense made the request. As the prosecution recommended, the defense could have asked

10  for a curative instruction instead of calling Berneburg as a witness. The defense's decision to

11  designate Berneburg as a witness, required the trial court to treat him as any other witness, and

12  take into consideration the conflicts of interest that would be present in Berneburg's

13  representation of petitioner. The Sixth Amendment does not guarantee an absolute right to

14  choose any particular advocate; and a defendant may not "demand that a court honor his waiver

15  of conflict-free representation." *Gonzalez-Lopez,* 548 U.S. at 152 (citing *Wheat*, 486 U.S. at 159–

16  160). *See also Wheat*, 486 U.S. at 163-64 (A trial court has wide latitude in balancing the right to

17  counsel of choice against the needs of fairness.). In addition, the record reflects that Berneburg's

18  role in the trial was limited to a support role. Berneburg was never intended to be lead counsel or

19  a substitute for Schoenberger. Dkt. 15, Exhibit 4 at 452, 456.  Petitioner's appointed counsel,

20  Schoenberger, remained present throughout the trial and at all court hearings. *See id.,* Exhibits 4-

21  6. Therefore, petitioner has failed to demonstrate that the state court's conclusion regarding his

22  Sixth Amendment right to counsel of choice was contrary to, or an unreasonable application of,

23  clearly established federal law. Accordingly, petitioner is not entitled to relief on this ground.

24

1

2

3                    **CERTIFICATE OF APPEALABILITY**

4          Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

5   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

6   (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

7   has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

8   2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

9   disagree with the district court's resolution of his constitutional claims or that jurists could

10  conclude the issues presented are adequate to deserve encouragement to proceed further."

11  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

12  (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

13  certificate of appealability with respect to this petition.

14                          **CONCLUSION**

15         The Court recommends denying petitioner's first ground for challenging whether the

16  deprivation of petitioner's counsel of choice violated the Sixth Amendment.

17         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

18  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

19  6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

20  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

21  of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

22  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

23

24

REPORT AND RECOMMENDATION - 10

imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **June 9, 2017**, as noted in the caption.

Dated this 17th day of May, 2017.

J. Richard Creatura
United States Magistrate Judge